Good morning. May it please the Court, I am Anthony Zamora, Counsel for Appellant and Cross-Appellants. On May 2007, this trustee proposed a confirmation plan that offered 32% on the dollar. The rule of thumb is 15%. Yet this trustee stands here today being sued or attempting to be sued for negligence and gross negligence in willful and intentional acts that simply don't exist. Many years later... Do you understand the importance of our inquiry to discuss jurisdiction?  The Court, as part of the confirmation process, established a procedure for the parties, particularly and specifically Mr. McCarthy and his client, Mr. Virtue, to submit a proposed series of allegations... Mr. McCarthy has not even been found to be immune or not immune from liability. Is that correct? That's correct, Your Honor. So why don't we wait and see if any of those bad things happen? Well, Your Honor, agreed. However, the damage has been done. What damage? It's considerable damage, Your Honor. Since May 2007, $954,000 has sat in a bank account and is being eaten up by administrative costs. The creditors stand empty-handed. They get nothing. And if this case proceeds, they almost certainly will get nothing in the future. This case will be administratively dissolving based on the conduct of this aspiring plaintiff. Isn't that generally an unfortunate consequence of the final judgment rule? Very commonly, somebody gets bled dry by litigation costs, whether they're in bankruptcy or not, when they can't get rid of a case on some preliminary motion and have to take it all the way through discovery and trial. Well, Your Honor, I suppose that's true. However, the bankruptcy system and the bankruptcy courts does its best to contain that disastrous outcome. The idea of the bankruptcy system, as I'm sure the Court knows, is to get as much money back to creditors in as fair a way as possible. And once you have an influence of the sort that we have here in this case, skewing every possible result, every possible principle of law, every possible action taken by the trustee, it basically perverts what should be a legitimate way to challenge a trustee's actions. This aspiring plaintiff had innumerable opportunities throughout the course of the administration of this estate to challenge the trustee. Look, he's saying, you should have sold me the coin shop right at the get-go and everything would be fine. And he's challenging that. For all we know, the bankruptcy judge will say the trustee is immune from the charge that he should have sold the challenger the coin shop, or he'll say the trustee made a reasonable business judgment that he should not at that time sell the coin shop to the challenger. And he may even say the challenger should pay costs and attorney's fees and make the trustee whole for all the trouble he's put him through. How do we know? Well, in fact, Mr. Virtue had every opportunity to do that. In fact, Mr. Virtue challenged each and every proposed settlement, each and every proposed sale, each and every proposed action that went before the court, thoroughly briefed, thoroughly contentious, and the court rejected Mr. Virtue's arguments each and every time. This is not about a second bite at the apple. This is about multiple bites at the apple. There is nothing left now but the court. Well, what's left is for the bankruptcy court to say what you're asking this court to say in the first instance, which is that the trustee is immune. Well, we're not so ambitious, Your Honor, necessarily. We believe that the bankruptcy court violated its own plan, its own order, by allowing Mr. Virtue to pursue a complaint on the basis of an even higher level of allegation, rejected his allegations based on negligence, and said you now have the opportunity to sue on gross negligence in willful conduct. We find this an unfairness that the court … Well, that is the standard, the legal standard. If there's some really gross, outrageous dereliction of duty, there is an opportunity to sue. But, Your Honor, there was no evidence of that. Mr. Virtue had every opportunity to lay that out. There isn't a complaint to that effect yet, right? A proposed complaint was filed with the court, Your Honor, a complete list of allegations and supporting facts, quote, unquote. The court found nothing to it, rejected it out of hand. This, we believe, should have ended the process. Instead, the court turned around and said you now have the opportunity to sue on something that we have no evidence of in the record. The court itself approved each and every one of the decisions that's challenged by Mr. Virtue. Of course, the court wouldn't find anything negligent. It was a great job. It was turning lemons into lemonade. The case was a mess. Thirteen adversary proceedings, state court litigation, a mint with environmental issues, a large office complex with multiple tenants, employees, an inventory that ranged from narcotics anonymous medallions to gold trinkets. Look, I should tell you, I didn't have bankruptcy experience when I was in practice. But I did a lot of personal injury litigation and some other kinds of business litigation. And in those cases, commonly you could save a whole lot of money if the case went off on summary judgment at the beginning of the litigation. When it doesn't, then you start flying all over the country and staying in fancy hotels, taking depositions, maybe flying to other countries for depositions. Then you go to trial, huge amount of preparation, and it all costs a fortune. And sometimes the judge just erred in denying the summary judgment that would have saved everybody two years of vast expense. That's tough. That's the final judgment rule in action. I don't understand what the difference is. I mean, you're telling us all these bad things that are happening, and I don't doubt that you're exactly right about that, but I don't see why that gives us jurisdiction. Okay, so I see the court's concern is with jurisdiction in this case. Yes, the finality of the judgment, since there is still an opportunity to pursue the gross negligence claim. Well, again, as we understood the order of the court, it was a final up or down decision that was to be made, whether the lawsuit could proceed or not proceed. This is typical in the bankruptcy process, and it is, again, part of that pragmatic approach that we have. Isn't that like when a 12b-6 or Rule 56 motion decides whether the lawsuit can proceed or cannot proceed? I suppose, Your Honor. Again, this was a final determination on litigation rights. To proceed beyond that without this appeal and without the jurisdiction of this court, I think would be incorrect. And with regard, I didn't mean to neglect your issue, your question about the offer, the early offer. The trustee considered it a lowball offer and unjustified and could not be. No, the reason I raised it was the finality concern. But that was so early in the case, Your Honor. It just had to be within months of the appointment of the trustee in 2001 that issue came up. And that's when our troubles started. I'd like to reserve. You may do that. Now we'll hear from Mr. McCarthy. Good morning and please the Court. I'm Dan McCarthy representing the appellee and cross-appellant Roger Virtue. Mr. Virtue is the largest unsecured creditor in the Continental Court. You also argued all about the merits. Can you comment on finality? Yes, Your Honor. I, in some detail, addressed what I believe was the applicable law in response to the court's invitation to address the finality issue by an order it entered about a month ago. And there are several issues. First of all, the bankruptcy court wanted a ruling from a higher court enunciating what the applicable standards were before the case proceeded. Yeah, I would have liked it too when I was a district judge. Not do a three-week trial if the court thought I should have granted some motion that I denied. I couldn't agree more. That's tough unless you make a 1292B certification. I advocated the bankruptcy court handling it the way it should have been handled, allow us to file the complaint, then have them file a 12B6 motion, rule the same way as you ruled in allowing the complaint to go forward. Then we'd have an interlocutory order. We'd proceed with the case and eventually go up on appeal. The bankruptcy judge didn't like that idea. She wanted to keep the case state, have the appeal proceed from her order on what the trustee could be sued for, so we would have a clear idea of what the scope of the potential liability was. Do we have a certification from a lower court to give this jurisdiction over an interlocutory appeal? It was not requested. Some years later, the bankruptcy judge made an offhand comment, maybe we should have had it certified, but I don't think that that's a barrier in this case, and let me explain why. I think there are two main reasons. First of all, there's ample case authority, including the Ninth Circuit's decision in Castillo, which says where you have an order determining a trustee's immunity, that's a final appealable order. Castillo is very clear on that, and that's what we have here. We have a bankruptcy judge that said... Which order do you say falls into that category? That's, of course, December 12th order, Your Honor, which allows certain aspects of the lawsuit to proceed, but not others. The bankruptcy judge said you cannot sue the trustee for negligence, but you can sue the trustee for gross negligence and intentional misconduct due to quasi-judicial immunity. It was a determination of immunity. That becomes an appealable order, and that's the order before you. Moreover, the Sherman v. SEC case, which we cited in our response to your order on finality, says that even if the bankruptcy court order is interlocutory, when you have a district court order ruling on it, that is appealable to the Ninth Circuit, and the court does have jurisdiction. Sherman v. SEC is fairly clear on that. Moreover, even if this were not viewed as a final appealable order, the December 12th order, we cite the case of N. Ray Kashani, which is a bankruptcy appellate panel decision from the Ninth Circuit. And Kashani said that if you have an interlocutory order, when you have a notice of appeal filed and it's appropriate to hear an appeal from the interlocutory order, the appellate court can treat the notice of appeal as a request to hear the appeal. And so, in effect, it is another way that you can get to hearing this appeal if you would like. Now, you asked earlier practically why we should hear this appeal now. This case has been on hold now for three years. If we have to start at the very beginning, we're not going to be back for another three years. It would really make more sense to have the case proceed in the way the bankruptcy judge wanted, which was to know what kind of theories we can pursue before we go forward with the case. And so those are the reasons why you ought to hear the appeal. Practically speaking, it makes sense to do it now, but legally speaking, you do have appellate jurisdiction. Now, counsel suggested that there are a number of facts that should cause you to question Mr. Virtue's position as an aspiring plaintiff. I want to clarify a few things. First of all, bankruptcy court did not reject everything Mr. Virtue argued. Mr. Virtue's objection to the trustee's request to abandon or to dispose of records caused the trustee to withdraw that motion. Most importantly, when the trustee tried to get her plan of liquidation confirmed, only Mr. Virtue's objection to that is what preserved the rights to pursue the trustee and her counsel. The trustee did not prevail on that. The trustee, most importantly, never requested court approval to continue to delay in selling assets at the continuing loss of about $30,000 per month, and she never got court approval of that. There was no approval, and that's critical in determining whether there should be immunity. She simply acted in a manner that a reasonably prudent person would not have acted, certainly negligent, but clearly grossly negligent. And we believe... I thought, I thought, do trustees seek court approval to do nothing? I thought they just sought court approval to do something, like sell. Your Honor, actually, trustees may petition the court for instructions very much like receivers do. It is not something that's done very frequently. When they have an affirmative action to take, they ask the court for permission to get approval for relief. Maybe it's selling assets, borrowing money, whatever the case may be. Maybe even declining an offer. Exactly. Let me give you an example. If a trustee wants to abandon assets, they make a motion to abandon assets because they want court approval of what they're not going to do, which is administer an asset. The trustee could have requested court approval for not doing anything. So Mr. Virtue would have had an avenue to object and say, get the trustee to sell these assets. We have good offers on the table. This estate is losing money. When he didn't have an avenue to do that directly, he repeatedly complained to the bankruptcy court. We cite in our briefs, the bankruptcy court reminded the trustee, let's get this case going more than once. On behalf of Mr. Virtue, I wrote the trustee repeatedly, please get these assets sold. The trustee would not do so. And then when the assets were sold, I wrote eight letters asking for information. Please tell us what you did that you think was reasonable to defend your conduct that I believe resulted in losses of about $750,000. Eight letters, no response, no information. In violation of the trustee's statutory duty, which she doesn't dispute, to furnish information concerning the estate and the estate's administration as is requested by a party in interest. That's the statutory duty that we explain in our brief. She does not deny that. She does not deny her statutory duty to promptly liquidate assets. She does not deny her duty to be honest with the court. Although she made numerous promises that she would get the assets sold, it wasn't done. There are many, many Ninth Circuit cases that say trustees can be sued for negligence. At this point, Virtue still has leave to amend, right? Well, here's what he did. He filed his complaint. And the answer is no, to be direct, Your Honor. But he filed his complaint because at the time he filed it, he was under a deadline, but there was a motion for reconsideration of the judge's December 12th ruling. So he said in his complaint, I'm going to sue for everything, as I said in my original complaint, because I understand that I have a motion for reconsideration of the court's ruling that may be granted, in which case I can proceed. However, if the court stands by its December 12th order and precludes a lawsuit on negligence, I will amend my complaint to correspond to that. At that point, he filed his complaint saying that. Or, in essence, really just it can be the parts that are irrelevant could just be ignored, too. There's a separate count. I'm not sure if it's called a count in your complaint, but you've got the gross negligence, the negligence, the breach of duty all segregated out. That's exactly right. The complaint specifically segregated the negligence claim, and it also segregated the claim against the trustee's attorney for professional negligence on behalf of the estate. If the judge stood by her opinion, those claims wouldn't have proceeded. But a stay was issued before an answer was required or a motion to dismiss had to be filed based on the effect of the court's prior order, so the case never proceeded at that point. We had a complaint that was subject to potential amendment, and it would have been amended had the court stuck by her December 12th ruling, which Judge Munn did, and allowed the case to proceed instead of staying it, which she didn't. So now we're faced with the top. I was thinking of WMX. We had an en banc where we said that a decision dismissing a claim with leave to amend is not a final judgment because there's leave to amend. Right. In order to have a final judgment, it has to either be dismissed without leave or, as I recall, we said the plaintiff can say, I'm not going to amend. And that's actually, and as I started out saying, that's the framework that I tried to get Judge Munn to put the case in. Just let us file the complaint as is. They can file a 12B6 motion. We'll have an interlocutory ruling. We'll proceed as ordinarily we would. She refused. In fact, after the district court ruled, we said, hey, look, there's no likelihood of success on the merits, at least at this point, with the stay so we can start proceeding with this lawsuit. Again, she said no. She wanted to have a ruling from the Ninth Circuit on the clear standards. And, Your Honor, there actually is a great need for a clear enunciation of the standards. There are many Ninth Circuit cases. If we were to dismiss the appeal for lack of jurisdiction, and if she stayed the case pending resolution by the Ninth Circuit of the disputed issues, then I suppose it would follow that she would then vacate her stay. Well, I think what you would want to do if you got to that point is you'd want to reverse her stay order and say the case should not have been stayed. It should have been permitted to proceed as ordinarily would. So we would have a full decision. But if we were to say we lack jurisdiction, we wouldn't have jurisdiction to vacate her order either. Why would we need to since all she issued the stay for was to let us rule on the merits? Stay orders are appealable orders. Regardless of whether the underlying order is appealable, the stay order, I believe, is appealable in the Ninth Circuit.  Even if you found that you didn't have jurisdiction on the December 12th order that set forth the scope of the potential lawsuit. So that would send the case back to judgment, allowing the adversary proceeding to finally go forward on the gross negligence and intentional misconduct theories. But then what's going to happen down the road, depending on the ruling, is we may be back saying you should have allowed us to sue for negligence. You see, the limitation. Well, there's only a possibility of that because if you were to win on gross negligence as a hypothetical, you'd never get to negligence. It wouldn't make any difference to you. And conversely, if the court were to say there's no negligence of any kind, this was all not only proper but outstanding, then you'd have no claim no matter what. So there are a lot of scenarios under which it would not become necessary for us to rule on those intermediate issues. No, I agree with you, Your Honor, that that's a possibility. But we're dealing with suing a bankruptcy trustee in bankruptcy court. And it seemed to us that the negligence carve-out was an easy way to say, oh, the trustee doesn't have any liability. And the line drawing between gross negligence and mere negligence is a little bit difficult. So it would help us in going into the lawsuit to know how to draw the lines. And if I may, because I know I'm running out of time. Well, the court told you so far. The court said gross negligence, yes, ordinary, no. So you have an answer. But, Your Honor, what I'm suggesting is that the court was incorrect in that determination. There are many Ninth Circuit decisions which say trustees can be sued for negligence. The last one was the Castillo decision, which actually didn't expressly state that. It talked about immunity and said because there's quasi-judicial immunity for the trustee and calendaring a confirmation hearing on a plan and giving notice, we don't need to reach the issue of negligence. So here's the hole in the law in the Ninth Circuit, and indeed nationally. If you have quasi-judicial immunity, you don't get to sue for negligence. But can you sue for more than that, gross negligence and intentional misconduct? Bankruptcy court in the district court said yes. And on that count, I agree. Here's where I disagree. The whole premise of my statement was if you have quasi-judicial negligence, we don't. We have mere quasi-judicial immunity. If you have that, that's how the question gets answered. You can't sue for negligence. Quasi-judicial immunity does not apply here. The two-pronged test in Antoine, the Supreme Court decision, which was applied by this court in Castillo, requires in the first instance a historical analysis to see if the function in question was traditionally adjudicatory. The trustees' function in selling assets, how to go about it, when to sell, those are business administrative decisions which were never traditionally adjudicatory. That means under the first prong of Castillo, you don't have quasi-judicial immunity. The trustee ignores that completely in both of her briefs, never discusses that issue. She talks about discretion, which is the second prong, but discretion must be in the exercise of a function that was traditionally adjudicatory. And it wasn't here because selling assets or delaying in it is not traditionally adjudicatory. So you only have at best an immunity which is qualified. And when you have qualified immunity, here's the continuum. The trustee is protected from reasonable mistakes, honest mistakes that an ordinary prudent person would make, but not protected from negligence, gross negligence, or intentional misconduct. Thank you, counsel. Thank you. We'll hear again from Mr. Zamora. Okay. May it please the Court. The Court is always pressuring trustees to close cases because time is money in bankruptcy. That's why the damage in this case is so severe. And that's why we didn't start really with an immunity argument, but we really feel that the facts of this case require it because basically by opening the door this far, a crack, this is firing a plaintiff and others like him. The facts harass and annoy a trustee for the duration of their trusteeship and then at the end of the process, complain about timing and unfairness and lack of an opportunity to be heard. If there is anything that argues for quasi-judicial immunity in this case, it's these facts. As for Castillo, Castillo says that it — What is the function of a trustee in managing the assets, a quasi-judicial function? Well, it is a function. Basically, it's, again, the Antoine analysis is to look at history and function. The history is, of course, that the bankruptcy trustee devolved or evolved from the bankruptcy court itself, bankruptcy referees. They are an extension of the judicial arm. The actual function, as many cases have held, in particular, I can name Lodge Johnny, which says that the sale of an asset is a discretionary act taken by a trustee. But is it a quasi-judicial act? It is a discretionary act that, coupled with the historical analysis, requires a conclusion that it is a quasi-judicial act. It is, in fact, a quasi-judicial act. Now, we have tried to figure out what Mr. Vernon's position is. I don't understand what you just said. I understood Castillo was a quasi-judicial act. It had to do with scheduling proceedings. But I don't understand what you just said about why, just because something is an exercise of discretion, that makes it a judicial act. Well, that is the analysis in Castillo. Castillo was about a Chapter 13 trustee in a calendaring function. No, but you have two things. One is the exercise of discretion, and we get that. I think the question we're asking is the other half, which is what is judicial in nature or adjudicatory in nature about the management of the assets? Well, these are adjudicating private properties and private personal property rights. Again, if the court in Castillo characterized a calendaring function as sufficiently discretionary and sufficiently discretionary to require quasi-judicial acts. It's not that it's discretionary. It's that that's just the sort of thing judges ordinarily do, is calendar things. Well, and again, Your Honor, the history of the bankruptcy system. I mean, I have discretion whether to go to the Indian restaurant or the Mexican restaurant at lunch, but that's not a judicial function. I have discretion, or at least when I was a district judge, I had discretion to rule on continuances, and that was a judicial function. The discretion isn't what makes it judicial. Well, again, if you are a bankruptcy, if you're the Lord Chancellor in England and you're dispensing with assets, and today you are a bankruptcy trustee and you are dispensing with assets, we argue, according to Castillo, that that function requires quasi-judicial amendments. Because it was historically done by the court itself. Historically done by the court itself, and logically speaking, it is a discretionary act. If something as simple as calendaring is a discretionary act, how can not the dispensation of an asset be a discretionary act? And again, if we step back for just look at the common sense of this, what is going to happen to trustees when you can question their judgment, their tactics, their actions throughout the course of an administration, and then at the end sue them for gross negligence? And then suggest, as Mr., this is really one of the first times I've heard it, that you have to actually petition the court for things you're not going to do. Impossible, Your Honor. It will grind the system to a halt. The idea that a trustee can go and run off and do a detour and frolic with the office of the United States trustee looking over their shoulder, the bankruptcy court looking at everything they do, and the creditors looking at everything they do. Let's recall, it's impossible. Mr. Virtue was on the creditors committee. He did nothing. The creditors committee did nothing. The reason the trustee was appointed was because the case was a mess. And he just said he's one of the largest creditors. And by the way, for all the challenge and criticism we're getting, this is a gentleman who handed over $490,000 in gold coins on the strength of two handwritten receipts. That is the entire foothold he has in this case. This trustee has struggled from day one to resolve his case to get money back to creditors. Today we are no closer to that objective than we were in May of 2007. Thank you, counsel. We appreciate the arguments of both counsel. The case is submitted. And our final case on this morning's docket is Flynn v. Holder.
judges: Goodwin, Kleinfeld, Graber